UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GOLAM KHAN,

       Plaintiff,

v.                                     Case No. 04-74897

THE KROGER CO.,                  HONORABLE AVERN COHN

       Defendant.

_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.  Introduction

This is an employment discrimination case.  Plaintiff Golam Khan is suing his former employer, defendant The Kroger Co. (Kroger) claiming national origin and religious discrimination and retaliation under Title VII, 42 U.S.C. § 2000 et seq.

Before the Court is Kroger's motion for summary judgment.  For the reasons that follow, the motion is GRANTED.

### II.  Background

The material facts as gleaned from the parties papers follow.

Khan is a Muslim from Bangladesh.

Khan began his employment with Kroger on September 3, 1990.  He most recently held the position of "Grocery/Department Head" at a Kroger store located in Ann Arbor, Michigan and was responsible for the night stock shift.  As part of his employment, Khan was an hourly employee and member of the United Food &

Commercial Workers Union Local 876 (the Union).  Kroger and the Union are a party to a collective bargaining agreement under which Kroger implements and disseminates its various personnel policies.  Included in these policies is the Employee Purchase Policy which is distributed to its employees as part of Kroger's Employee Handbook.  Khan admits to receiving the employee handbook, but testified at deposition that he could not understand it as he has difficultly reading and understanding English.

The Employee Purchase Policy states in relevant part:

2.      Employees will not be allowed to accumulate product anywhere prior to the checkout.  All merchandise sold to employees must be rung on cash register and is to be recorded item by item.  The employee's checkout transaction is the same for the regular customer.
...
8.      Failure to produce a receipt for product to be consumed or removed from the store will result in discharge.

9.      All merchandise removed from the store must be paid for in full before removing it from the store.

10.     Any violation of the Employee Purchase Policy is grounds for discharge.

On January 28, 2004, during a break in his shift, Khan went through a U-scan checkout line with several items for his personal consumption.  He also separately brought over to a cashier a single can of tomato sauce as well as a case of fire logs. Khan says that he directed the cashier to ring up 48 cans of tomato sauce; the cashier maintains that Khan did not tell her this and therefore only rang up the one can Khan had given her.

William Lusk, another night stock manager and other co-workers approached Khan and requested that he produce a receipt for his purchases.  Khan refused to produce a receipt and instead left the store with his purchases, which included a 48 can

2

case of tomato sauce.  Upon his return to the store, Khan again refused to produce a receipt.  Lusk then had Khan's receipt re-printed from the cash register.  The receipt showed that Khan paid for only one of the 48 cans of tomato sauce.  Khan apparently blamed the cashier for the incorrect ringing and stated that he was not responsible for the error and did not have to pay for the extra cans.  Eventually, however, Khan returned to the register and paid for the remaining 47 cans of tomato sauce, which cost $8.93.

Later that day, Khan was informed by the Store Manager, Mike Boulanger, that he was suspended pending investigation for violating the Employee Purchase Policy.

Kenneth Marlow, an investigator with Kroger's Risk Management Department, conducted an investigation into the January 28, 2004 incident which included obtaining and reviewing written statements from all witnesses to the incident.  During the investigation, Khan apparently said that because he was punched out at the time, he was not an employee and therefore the policy did not pertain to his activity.  Marlow prepared a report of his investigation.  See Kroger Ex. H.

Bryan Kittleson, Manager of Labor Relations for Kroger's Great Lakes Marketing Area, reviewed the report, the written statements, as well as Khan's personnel file and concluded that Khan had violated the Employee Purchase Policy and that discharge was warranted.

In a letter dated February 5, 2004, Kittleson informed Khan and his Union that Kroger decided to terminate him.

Khan filed a grievances over his suspension and termination.  His Union declined to pursue the grievance.

On April 29, 2004, Khan filed a charge with the Michigan Department of Civil
Rights and the Equal Employment Opportunity Commission (EEOC) in which he
claimed he was terminated because of his national origin and religious discrimination.

On December 16, 2004, Khan filed a complaint under Title VII, claiming (1)
religious discrimination, (2) national origin discrimination, and (3) retaliation for
complaining about unlawful discrimination.

### III.  Summary Judgment

Summary judgment will be granted when the moving party demonstrates that
there is "no genuine issue as to any material fact and that the moving party is entitled to
a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  There is no genuine issue of
material fact when "the record taken as a whole could not lead a rational trier of fact to
find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving
party's response "must set forth specific facts showing that there is a genuine issue for
trial."  Fed. R. Civ. P. 56(e).  Showing that there is some metaphysical doubt as to the
material facts is not enough; "the mere existence of a scintilla of evidence" in support of
the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must
present "significant probative evidence" in support of its opposition to the motion for
summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8
F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.  Additionally, and
significantly, "affidavits containing mere conclusions have no probative value" in

4

summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52).  The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  See Anderson, 477 U.S. at 255.  Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted.  Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

IV.  Analysis

A.  National Origin and Religious Discrimination

Title VII prohibits discrimination by an employer against any individual on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a).  A plaintiff may establish a prima facie case of employment discrimination with direct or indirect evidence.  Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (en banc); Talley v. Bravo Pitino Restaurant, 61 F.3d 1241, 1246 (6th Cir. 1995).

1.  Direct Evidence of Discrimination

A "direct evidence" discrimination case requires proof "which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176

5

F.3d 921, 926 (6th Cir.1999). "Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir.2003).

Kroger says that Khan has no direct evidence of national origin or religious discrimination. Kroger references derogatory comments uttered by co-workers. Khan apparently testified at deposition that Lusk twice referred to him as a "bin laden" and another co-worker, Amy Donaldson, also once referred to him as a "bin laden." Kroger says that these isolated remarks by co-workers do not as a matter of law constitute direct evidence of discrimination.

Khan's response is somewhat confusing. As to his direct evidence case, Khan says that the "only direct evidence is ... Kittleson's affidavit ... states he did not know what national origin or religion [Khan] was at the time he made his decision to terminate his employment..." It is not clear how Kittleson's statement is evidence of direct discrimination. Moreover, Khan says that his personnel file lists his national origin as "AI" which Kittleson admits he reviewed. Therefore, says Khan, Kittleson's statement that he did not know Khan's national origin is contradicted by the personnel file which he admits he reviewed. Again, it is not clear how this establishes direct evidence of religious or national origin discrimination. As Kroger points out, the code "AI" does not stand for Muslim, Middleastern or Bangladeshi, but rather for the term "American Indian/Alaskan Native" (apparently incorrect as to Khan.). Thus, this does not contradict Kittleson's statement. Moreover, while Khan does not address the alleged

6

comments by his co-workers in the context of his direct evidence case, it is noted that

Kroger is correct that such remarks by non-decisionmakers are not evidence of

discrimination.  Hopson v. DaimlerChrysler Corp., 306 F.3d 427 (6th Cir. 2002); Phelps

v. Yales Sec., Inc., 986 F.2d 1020, 1025 (6th Cir. 1993) ("isolated and ambiguous

comments 'are too abstract, in addition to being irrelevant and prejudicial, to support a

finding of ... discrimination.'").  In short, Khan has failed to make out a case of national

origin or religious discrimination based on direct evidence.

2.  Circumstantial Evidence of Discrimination

Indirect or circumstantial evidence of discrimination, on the other hand, permits

the inference that the employer acted with discriminatory animus.  Kline v. Tenn. Valley

Auth., 128 F.3d 337, 348 (6th Cir.1997).  When a plaintiff alleges indirect evidence of

discrimination, the claim is evaluated under the tripartite framework established in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Department of

Community Affairs v. Burdine, 450 U.S. 248 (1981).  See Braithwaite v. Timken Co.,

258 F.3d 488, 493 (6th Cir. 2001).  Under the McDonnell Douglas framework, a plaintiff

must first establish a prima facie case of discrimination by showing that: (1) he is a

member of a protected class; (2) he was qualified for the position; (3) despite his

qualifications and employment, he suffered an adverse employment action; and (4) he

was treated differently from similarly situated employees who were not within the

protected class.  See id.  If the plaintiff meets this burden, the employer must establish a

legitimate, non-discriminatory reason for the adverse employment action in issue.  Id.

Once the employer produces evidence of a non-discriminatory reason, the plaintiff has

the burden to show that the proffered reason was pretext intended to obscure the true

7

discriminatory motivations of the employer.  Id.

Here, Kroger says that there is no indirect evidence of national origin or religious discrimination because Khan cannot show that he was replaced by someone outside of the protected class or was treated differently than a similarly-situated non-protected employee.  In other words, Kroger says that Khan cannot meet the forth prong of the prima facie case.  Khan, however, says that he was replaced by Lusk, a member outside of his protected class.

Kroger's argument is well taken.  Although Khan says that he was replaced by Lusk, the record shows that Lusk held the same position as Khan "Grocery/Department Head" and were in fact, as Kroger calls them, co-head stock managers.  This is stated in the affidavit of Mike Boulanger, the Store Manager, and Lusk's Employee Profile. Lusk also has more seniority and actually made more money than Khan.  Khan's unsupported assertions to the contrary, including the assertion that he "supervised" Lusk or that Lusk was his "assistant," are speculative and insufficient to demonstrate a genuine issue of material fact.  Thus, Khan has not established that he was replaced by a member outside of the protected class.

Moreover, Khan cannot establish that he was treated differently than someone outside the protected class.  Khan admitted at deposition that many employees have been fired for violating the Employee Purchase Policy and was unable to point to any employee of a different national origin or religion who violated the policy but was not fired.  Kittleson's affidavit offers further support on this point, as he states that it is Kroger's practice to fire employees who violate the policy.

In short, Khan has not made out a prima facie case of national origin or religious

discrimination sufficient to survive summary judgment.

Even assuming, arguendo, that Khan has made out a prima facie case, Kroger says his claims still fail because the reason for his termination - violation of the Employee Purchase Policy - was legitimate and Khan cannot show pretext.

Kroger's position is well-taken.  Kroger has provided a legitimate, non-discriminatory reason for the termination.  It is Khan's burden to show pretext.  Khan has attempted to make such a showing by arguing that the violation of the policy resulted from the cashier's error, not his own.  As Kroger points out, however, Khan's refusal to provide a receipt was itself a violation.  The policy also states that all merchandise must be paid in full; it does not say that unless the employee subjectively believes that they actually paid for the items.  Khan also makes an attempt to read some ambiguity into the policy is unavailing.  The policy is clear.  While paragraph 8 says that the failure to produce a receipt (which Khan violated) will result in discharge and paragraph 10 says that any violation is grounds for discharge, the point of the policy is that a failure to pay for all items of merchandise is a violation for which an employee may be terminated.  Khan violated the policy by not producing a receipt and, as it turns out, for not paying for the extra cans.  In short, Khan has not cast doubt on Kroger's reason for his termination sufficient to establish an issue of fact as to whether the reason was pretextual.

### B.  National Origin and Religious Harassment

Although the complaint does not contain a discrete claim of hostile work environment harassment based on national origin or religion, ti does contain allegations to this effect.  See Complaint at ¶¶ 11, 12, 33, 34, 35, 36, 41.  Kroger therefore says

9

that to the extent Khan makes such a claim, it is entitled to summary judgment.

Khan, in response, admits that the complaint does not make a discrete hostile work environment claim but that he has made out a case for harassment based on national origin and religion.  As evidence, Khan points to the comments made by co-workers referring to him as a "bin laden" and the fact that he reported it to Boulanger.

In order for a plaintiff to establish a prima facie Title VII claim of hostile environment harassment by a co-worker, he/she must demonstrate that the following elements of the statutory tort are present: (1) he/she is a member of a protected class; (2) he/she was subjected to unwelcome harassment; (3) the harassment complained of was based upon national origin or religion; (4) the harassment unreasonably interfered with his/her work performance or created a hostile or offensive work environment that was severe and pervasive; and (5) the employer knew or should have known of the charged harassment and failed unreasonably to take prompt and appropriate corrective action.  Newman v. Federal Express Corp., 266 F.3d 401, 405 (6th Cir. 2001);  Fenton v. HiSan, Inc.,174 F.3d 827 (6th Cir. 1999).  See also Blankenship v. Parke Care Centers, Inc., 123 F.3d 868, 872-73 (6th Cir. 1997).

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).  In determining whether there was a hostile work environment, courts look to the totality of the circumstances.  Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998). The conduct must be severe or pervasive enough

10

to create an environment that a reasonable person would find hostile or abusive, and that the victim must subjectively regard as abusive.  Bowman v. Shawnee State Univ., 220 F.3d 456, 463 (6th Cir. 2000). "Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment 'include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' "  Id. (quoting Harris, 510 U.S. at 23, 114 S.Ct. 367).  "The Supreme Court has consistently held that 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.' "  Newman, 266 F.3d at 405 (quoting Faragher, 524 U.S. at 788, 118 S.Ct. 2275).

Here, Khan has not made shown that he suffered harassment because of his national origin or religion that was so pervasive or severe as to create a hostile work environment.  The three alleged incidents were not sufficiently pervasive to establish an abusive working environment.  Moreover, there is no indication as to the time period in which the comments were made.  Such infrequent, isolated, and amorphous incidents are insufficient as a matter of law to constitute a hostile work environment.  See Bournini v. Bridgestone/Firestone North American, Tire, LLC, 2005 WL 712881 (6th Cir. Mar. 30, 2005) (holding that eight alleged incidents of co-worker derogatory comments regarding national origin or Muslim faith which were spread out over a period of five years were insufficient to constitute a hostile work environment) discriminatory changes in the terms and conditions of employment.

Moreover, Khan is unable to satisfy the fifth prong; namely, that Kroger was liable

11

for the harassment.  In order to hold an employer directly liable in this context, the plaintiff must show "that the employer knew or should have known of the conduct, and that its response manifested indifference or unreasonableness."  Id. at 663 (citations omitted). "Generally, a response is adequate if it is reasonably calculated to end the harassment." Id. (citations omitted).  Here, other than Khan's vague statements that he complained to Boulanger, there is no substantive evidence in the record suggesting that Kroger knew about the incidents and failed to respond appropriately to them.

C.  Retaliation

Khan also claims that he was retaliated against for complaining about being harassed.  Kroger says that this claim fails because (1) Khan did not include a claim of retaliation in his charge, and (2) there is no causal connection between any protected activity and his termination.

As to the first argument, it is undisputed that Khan's EEOC charge did not include a claim for retaliation.  The Sixth Circuit has made clear that

> Federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge.  Retaliation claims are generally excepted from this filing requirement because they usually arise after the filing of the EEOC charge.  However, this exception to the filing requirement does not apply to retaliation claims based on conduct that occurred before the EEOC charge was filed.

Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 254 (6th Cir. 1998).

Here, all of the alleged retaliation occurred before he filed his EEOC charge.  Thus, the Court does not have jurisdiction over Khan's retaliation claim.

However, even if the Court gave a broad reading to the charge based on Khan's lack of familiarity with the English language, Khan's retaliation claim fails.  To establish a

12

prima facie case of retaliation, Khan must show that: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.  Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000); Canitia v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1066 (6th Cir. 1990)(outlining previous standard for prima facie Title VII retaliatory harassment case).

Here, there is a real question of whether Khan adequately informed Kroger of the alleged harassment, but even more there is no evidence of a causal connection between any complaints and his termination.  Kittleson made the decision to terminate Khan.  Kittleson states in his affidavit that he was not aware of any complaints made by Khan regarding national origin or religious discrimination.  Khan offers nothing to the contrary.  As discussed above, the erroneous notation of "AI" on his personnel file does not establish that Kittleson knew of Khan's national origin or religion at the time of his termination.

## V.  Conclusion

There is simply no evidence to conclude that Khan's termination was in any way the result of discrimination based on his national origin or religion.

SO ORDERED.


 s/Avern Cohn_____
                    AVERN COHN
Dated: November 8, 2005              UNITED STATES DISTRICT JUDGE
       Detroit, Michigan

13